IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS DAVIS | * | |
| aka THOMAS EDWARDS, #311-358 | | |
| Petitioner, | * | |
| | | |
| v. | * | CIVIL ACTION NO. AW-08-3453 |
| | | |
| BOBBY SHEARIN[1] | * | |
| and | | |
| THE ATTORNEY GENERAL OF THE | * | |
| STATE OF MARYLAND | | |
| Respondents. | * | |
| | ****** | |

## MEMORANDUM

Pending is Thomas Davis's[2] pro se Petition for Writ of Habeas Corpus (Paper No. 1), the
State's response and exhibits (Paper No. 8), and Davis's reply (Paper No. 17). The Court finds
no need for an evidentiary hearing, *see* Rule 8(a), <u>Rules Governing Section 2254 Cases in the
United States District Courts</u>; *see also* 28 U.S.C. § 2254(e)(2), and for reasons stated below, will
dismiss the Petition with prejudice and deny a Certificate of Appealability.

### Background

At his first trial, Davis was convicted of first-degree murder and a handgun offense and
sentenced to life in prison. The trial court granted his motion for new trial after finding that one
of the State's witnesses, Brenda Brown, gave false testimony. Paper No. 8, Exhbit 16 at 76 and
Exhibit 17 at 13. The relevant facts developed at Davis's second trial were summarized in the
unreported opinion issued by the Court of Special Appeals of Maryland as follows:

> On the morning of June 21, 2000, in Baltimore City, Corey Fluitt was
> shot and killed. The appellant was charged with numerous offenses arising out

---

1 The Clerk shall amend the docket to substitute as a proper Respondent current Warden Bobby Shearin for former
Warden John Rowley.

2 Davis is also known as Thomas Edwards.

of the homicide. At his trial, three witnesses testified for the State: Patricia Mayo, an eyewitness to the shooting; Detective Richard Purtell, the primary investigator; and Sandra Bohlen, a firearm examiner.

Mayo, an admitted heroin addict, testified that at around 8:00 a.m., on the day in question, she was in the 2800 block of Westwood Avenue, waiting for a heroin supplier. She saw the appellant and Fluitt near the corner of Westwood and Poplar Grove Avenues. Mayo had known Fluitt and the appellant, whose nickname was "Boo," for several years.

Mayo saw a man approach the appellant. The appellant and the man exchanged words. The appellant then pointed to Fluitt. The man approached Fluitt and handed him some money. Fluitt handed the man an object. The man then left the area. The appellant then approached Fluitt and the two started arguing. Mayo understood from the argument that the appellant was demanding "half of the money" Fluitt had collected. The argument escalated into a physical altercation, during which Fluitt cut the appellant on the back. Shortly thereafter, the appellant left the area. He was visibly upset.

According to Mayo, about ten to twenty minutes later, the appellant returned and approached Fluitt. The two exchanged more words and Fluitt started to run. The appellant pulled out a gun and shot Fluitt three times, hitting him in the hand, buttock, and head. Stunned, Mayo left the area, bought some heroin (which she used), and returned to the location of the shooting. Although by then the police were present, she did not speak to them.

Five days after the shooting, on June 26, 2000, Mayo was taken to a police station for questioning. She told Detective Richard Purtell that she had not seen who shot Fluitt. On November 3, while locked up on an unrelated matter, Mayo again spoke Detective Purtell. That time, she told the detective that "Boo" had shot Fluitt. She also identified the appellant's picture from a photographic array as a picture of the shooter. She wrote on the back of his picture, "I Patricia Mayo saw Boo first get into a fight with Corey and then sho[o]t him on Westwood." Mayo explained at trial that she decided during her second interview to tell the detective who shot Fluitt because she was "clean" and was bothered by what she had seen.

Detective Purtell testified that the police recovered several objects, including a knife, near Fluitt's body. There was no blood on the knife. On July 24, Mayo called him and identified a man named "Boo" as the shooter. When Detective Purtell spoke to Mayo again, on November 3, he did not make any promises to her in exchange for her identifying the appellant as the shooter. On November 16, the appellant was arrested and taken to a police station. He waived his *Miranda* rights [citation omitted] and denied shooting Fluitt. A search and seizure warrant was executed for his house, but no weapon was located.

> Bohlen testified that a bullet and two partial bullets were recovered from the crime scene. It was determined by forensic examination that the bullet and two bullet specimens were fired from the same gun.
>
> The appellant presented no testimonial evidence.

Paper No. 8, Exhibit 9 at 1-3. On the basis of this evidence, the jury convicted Davis of first-degree murder and use of a handgun in the commission of a crime of violence. *Id.*, Exhibit 5 at 35-37. Davis was sentenced to serve life in prison for first-degree murder, plus a consecutive ten years incarceration for the handgun offense. *Id.*, Exhibit 6 at 13.

On appeal to the Court of Special Appeals, Davis, through counsel, argued that the trial court abused its discretion in refusing to propound a question during jury selection as to whether any prospective juror was related to a law enforcement officer. *Id.*, Exhibit 7 at 1. Maryland's intermediate appellate court affirmed Davis's convictions on November 26, 2003. Paper No. 8, Exhibit 9. Davis's pro se petition for a writ of certiorari before the Court of Appeals of Maryland was denied by order dated March 11, 2004. *Id.*, Exhibits 10 and 11.

On November 29, 2004,. Davis filed a petition for post-conviction relief in the Circuit Court for Baltimore City, which, as supplemented and addressed by the court, alleged:

1. Ineffective assistance of trial counsel for failing to:
    a. subpoena witnesses to support his alibi defense;
    b. investigate other potential perpetrators;
    c. hire an expert for crime scene measurements;
    d. caution witnesses about referring to his prior trial and strike prejudicial testimony in this respect;
    e. particularize the motion for judgment of acquittal;
    f. inform him of a plea offer made by the State;
    g. voir dire a juror who allegedly observed him in restraints;
    h. move to suppress Patricia Mayo's testimony;

    i. investigate and elicit testimony with respect to any agreement between Mayo and the State;
    j. request an instruction on voluntary manslaughter;
    k. move to correct the commitment record; and

l.  object to the admission of prejudicial photographs.

Davis also argued the cumulative effect of these errors mandated relief.  Paper No. 8,

Exhibits 12-17.  Following a hearing (*id.*, Exhibit 16), the post-conviction court denied relief in

an order filed December 13, 2007.  *Id.*, Exhibit 17.  Davis sought leave to appeal, raising all of

the previously-presented claims and adding a new claim, that trial counsel failed to request an

alibi instruction.  *Id.*, Exhibit 18.  In an unreported opinion dated November 20, 2008, the Court

of Special Appeals summarily denied Davis's application for leave to appeal. *Id.*, Exhibit 19.[3]

Davis now argues counsel was ineffective[4] for failing to:

a.  subpoena witnesses to support his alibi defense;
b.  investigate other potential perpetrators;
c.  hire an expert for crime scene measurements;
d.  caution witnesses about referring to his prior trial and strike prejudicial testimony in this respect;
e.  particularize the motion for judgment of acquittal;
f.  inform him of a plea offer made by the State;
g.  voir dire a juror who allegedly observed him in restraints;
h.  request an alibi instruction;[5]
i.  move to suppress Patricia Mayo's testimony;
j.  investigate and elicit testimony with respect to any agreement between Mayo and the State;
k.  request an instruction on voluntary manslaughter;

---

[3] The mandate issued on January 20, 2009.  *Id.*

[4] Davis also claims he is entitled to habeas relief based on the cumulative effect of trial counsel's errors.   Pursuant to the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless error has the potential to prejudice a defendant to the same extent as a single reversible error."  *U.S. v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990), cited with approval in *US v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002); *see also United States v. Basham*,  561 F.3d 302, 330 (4th Cir. 2009).  Generally, however, if a court "determine[s] ... that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." *U.S. v. Fields*, 483 F.3d 313 (8th Cir. 2007). To satisfy this requirement, such errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *U.S. v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004).  When "none of [the] individual rulings work[s] any cognizable harm,....[i]t necessarily follows that the cumulative error doctrine finds no foothold." *Sampson*, 486 F.3d 13, 51 (1st Cir. 2007).  In this Circuit, however, the cumulative error doctrine is not generally recognized. *See Hiss v. U.S.*, __ F.Supp.2d ___ , WL 1875760 (D. Md. 2010); *Arnold v. Evett*, 113 F.3d 1352, 1364 (4th Cir. 1997). For reasons noted herein, Davis is not entitled to relief under the cumulative error doctrine.

[5] This claim, although technically subject to the procedural default doctrine, is sufficiently linked to Davis's first claim concerning pursuit of an alibi defense, and will be addressed in that context.

l.  move to correct the commitment record; and
m.  object to the admission of prejudicial photographs.

 Paper No. 1, Petition, Grounds 1-14.

## Threshold Issues

Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), petitioners for federal habeas corpus relief must exhaust each claim in state court.  Exhaustion is achieved by seeking review of the claim in the highest available state court.  *See* 28 U.S.C. §§ 2254(b)-(c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal and with other claims by way of  a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal.  Davis no longer has any available state direct review or collateral review remedies available for the claims raised here.  His claims will be considered exhausted for this federal habeas corpus review.

Timeliness

Respondents do not contend - and the record does not show - that Davis's petition is time-barred.

## Standard of Review

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[6] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) of the habeas statute provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Using this analysis, the Court now examines Davis's claims.

## Ineffective Assistance of Trial Counsel

The right to effective assistance of counsel is protected by the Sixth Amendment. Constitutional ineffective assistance of counsel claims are governed by *Strickland v. Washington,* 466 U.S. 668 (1984).[7] To prevail on a claim of ineffective assistance of counsel, a petitioner

---

[6]     Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333,  n. 7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court  identifies the correct  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

[7]The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002):

        For respondent to succeed, however, he must do more than show that he would have satisfied

must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland,* 466 U.S. at 687. To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. There exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101(1955)). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

### Alleged Failure to Subpoena Alibi Witnesses or Request Alibi Instruction

As the Supreme Court has explained, a criminal defense lawyer possesses a duty to conduct a pretrial investigation that is reasonable under prevailing professional norms. *See Strickland,* 466 U.S. at 688; *see also Wiggins v. Smith*, 539 U.S. 510, 523 (2003). The strategic decision by Davis's lawyer concerning the extent of his investigation into the alibi defense "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *see also Byram v. Ozmint*, 339 F.3d 203, 209 (4th Cir. 2003) (same). This Court must make "every effort to avoid the distorting effects of hindsight," *Strickland*, 466 U.S. at 689, and must examine trial counsel's performance

---

*Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. [internal citation omitted]. Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id.* at 698-9.

at the time of the alleged error and "in light of all the circumstances...." *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In rejecting Davis's claim that trial counsel was ineffective for failing to subpoena alibi witnesses, the state post conviction court found as follows:

> Petitioner asserts that he was not the individual who killed the decedent. In support of this claim he brought several witnesses at the first trial. Petitioner claims that defense counsel was aware of the following witnesses: Doris Jenkins, Eyvone Johnson, Carl Candy and Rev. Hunt. Petitioner asserts that if given the opportunity to testify at the second trial, these witnesses would have provided alibi testimony, which would exculpate the Petitioner from the murder.

> As a general principle the failure by counsel to provide exculpatory evidence is proper grounds for granting relief for ineffective assistance of counsel. *Griffin v. Warden, Md. Corr. Adjustment Center*, 970 F.2d 1355 (4th Cir. 1992); *Washington v. Murray*, 952 F.2d 1472, 1476 (4th Cir. 1991). If counsel is able to provide evidence, which would exculpate the defendant, then defense counsel is mandated to do so.

> However, in the instant matter, there is a different set of circumstances. In the instant matter, there were several [witnesses]. Defense Counsel had an opportunity to allow the [witnesses] to testify. In the first trial, the [witnesses] testified as to the Petitioner's alibi. Despite their accounts, they presented inconsistent accounts of where the Petitioner was on the day of the murder. Subsequently, he was found guilty of Murder in the First-Degree. "Counsel will not be deemed to have rendered ineffective assistance of counsel for failing to call a particular witness unless it is shown that the witness was available and <u>could have presented useful information</u>." *State v. Lloyd*, 48 Md. App. 535 (1981). (emphasis added). The witnesses' inconsistencies did not provide any substantial testimony.

> Simply put, counsel had one bite of the apple during the first trial to attempt to put the alibi defense before a jury. This defense did not work. At the second trial, he had an opportunity to change his strategy for the better. This Court believes that defense counsel was not ineffective for executing a new trial strategy. In seeing that trial counsel acted properly, this Court denies this allegation of error.

Paper No. 8, Exhibit 17 at 4-5. The Court notes that Davis's trial counsel testified at the post-conviction hearing that the alibi defense asserted at Davis's first trial had an adverse impact on the case, in part, because of the contradictions contained in the witnesses' testimony. *Id.*, Exhibit

16 at 79-80, 98-100. Given a second opportunity to try the case, counsel chose a different strategy he believed to be more viable, abandoning the alibi defense and focusing the attack on the reliability of Patricia Mayo's identification. *Id*.; *see also* Exhibit 3 at 90-92, 96-97; Exhibit 4 at 57-108; Exhibit 5 at 5, 14-28. This strategy, although ultimately unsuccessful, was sound. Relief shall not be granted on Davis's first claim. Because an alibi defense was not pursued, counsel cannot be faulted for failing to request an alibi instruction; thus, Davis's eighth claim also shall be denied.

## Investigation of Other Perpetrators

In his second claim, Davis contends trial counsel was ineffective in failing to investigate other witnesses whose names were provided in the State's discovery and, had those witnesses been questioned, they would have provided sufficient evidence to establish Davis's innocence. The post-conviction court examined this claim and found as follows:

> As noted in *Wood v. Zadranick*, 578 F.2d 980, 982 (4th Cir. 1978) the right to effective counsel imposes a correlative duty on the defense to undertake reasonable steps to investigate all open avenues of defense. However, there is no duty on the trial counsel to perpetrate false evidence. During the testimony, Detective Purtell testified that no other witnesses saw the murder of the victim. His testimony remained steadfast in both trials.

> In examination of the [first trial] transcript, trial counsel investigated a myriad of witnesses. He interviewed or investigated Doris Jenkins, Eyvone Johnson, Carl Candy and Rev. Hunt all for the purpose of his alibi testimony. Furthermore, the Petitioner within the confines of his own Petition does not mention a witness that trial counsel could have interviewed. Such allegations must be supported by the record and not rumor or conjecture. In seeing no merit to this allegation, this Court denies this allegation of error.

Paper No. 8, Exhibit 17 at 6. While counsel must conduct a reasonable investigation into potential defenses, "*Strickland* does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." *See Tucker v. Ozmint*, 350 F. 3d 433, 442 (4th Cir. 2003) (quoting *Green v. French*, 143 F.3d 865, 892 (4th Cir.1998),

*abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362). The post-conviction record reveals that trial counsel investigated all leads in order to formulate a defense strategy. *Id*., Exhibit 16 at 103-04, 110-12, 130-31; Exhibit 17 at 6. None of the witnesses observed the shooting, and thus could not provide exculpatory evidence. *Id*., Exhibit 16 at 110-12, 130-31. The post-conviction court's ruling as to this claim for relief was not an unreasonable application of the law, and Davis is not entitled to habeas relief under 28 U.S.C. § 2254(d).

Failure to Hire Private Investigator

The post-conviction court thoroughly examined Davis's claim that trial counsel was required to hire a private investigator to prepare and present videotape evidence to show jurors how far the State's witness, Patricia Mayo, was from the crime scene. The post-conviction court found neither a duty to provide such services, nor any prejudice as a result of same:

> Defense counsel owe a number of duties and responsibilities to their clients in any trial. The 6th Amendment through *Strickland v. Washington* mentions a reasonableness test to which defense counsel must adhere. However, the hiring of expert witnesses is beyond the "reasonableness" standard mentioned in *Strickland*. Trial counsel's purpose in regard to effective assistance does not include right to counsel to provide a defendant with a private investigator. *U.S. v. Gouveia*, 467 U.S.180 (1984).

> Petitioner's claim is that he should have had a right to an investigator to provide testimony for his defense counsel's measurements. If courts were to agree with Petitioner, accordingly, the absence of defense counsel's ability to provide a number of trial aids would operate as ineffective assistance of counsel. The standard only requires a reasonable representation. The ability to hire an investigator, while an efficient tool, goes beyond the duty owed by trial counsel to provide effective assistance of counsel. Even more so, counsel himself went out to the scene of the crime, videotaped himself measuring the distance between the witness identification and the scene of the murder. He later introduced this activity at trial. Since the hiring of an investigator is not essential to the providing of effective assistance of counsel, this Court denies this allegation of error.

Paper No. 8, Exhibit 17 at 7-8. The trial and post-conviction transcripts demonstrate that trial counsel attacked Mayo's identification as unreliable both by way of argument and also by

presenting a video showing actual distance.  *Id*., Exhibit 5 at 18-20 and Exhibit 16 at 80-81, 105-

07, and 131-32.  Relief is not warranted here.

Failure to Prevent References to Prior Trial

During cross-examination, Davis's counsel elicited the following response from State's

witness Patricia Mayo:

> MR. VAN BAVEL: Ms. Mayo you have described the shots in
> your testimony today. You describe the shots in your statement.
> You've described the shots in prior testimony in another hearing
> in this case. And now you're saying you can't describe them
>
> MS. PATRICIA MAYO: No. I described it today the way I
> described before I mean the other trial, and when they
> questioned me.

Paper No. 8, Exhibit 4 at 71.  Counsel also alluded to Davis's prior trial during closing argument:

> MR. VAN BAVEL:  Examining Ms. Mayo why did she lie the first
> time?  Did she have any reason to lie?  She didn't say, I was afraid
> of  him.  She didn't say, [h]e threatened me.  She didn't say anything
> of the kind.  She didn't go to the police.  She didn't volunteer.  She was
> picked up after five days and she lied.  She said, I was up by North
> Avenue and I didn't see what happened….
>
> The victim's family was involved in the investigation.  Were they
> pressuring the detective?  Were they giving money to witnesses?
> I don't know.  I don't want to cast [aspersions] on the poor victim's
> family.  Corey Fluitt was killed, but there's something suspicious
> there.  Why?  Because Brenda Brown was a witness in a previous
> trial of this case –
>
> [THE PROSECUTOR]:  Objection Your Honor.
>
> MR. VAN BAVEL:  The detective testified –
>
> [THE PROSECUTOR]:  Objection Your Honor.
>
> THE COURT:  Okay overruled.  Members of the jury remember this is
> argument not evidence.  Your memory controls as far as what was
> said and wasn't said.
>
> MR. VAN BAVEL:  The detective testified he developed witnesses,

and one of the witnesses that he developed was Brenda Brown, and that she testified in a previous hearing in a previous trial, and that it was proved she perjured herself. Not that she was mistaken. Not that she was in error. Not that she misperceived, but she lied because she was in jail at the time of the crime okay so something's going on in plain English. I don't know what it is. Maybe you don't know what it is, but if that doesn't create a reasonable doubt that the fact that somebody is already a proven perjurer in this case, if that doesn't create a reasonable doubt in light of all that you've heard you must find this man not guilty.

Paper No. 9, Exhibit 5 at 22-23 and 27-28. The post-conviction court examined testimony and argument referencing Davis's previous trial, and found as follows:

Petitioner claims that trial counsel was ineffective in his assistance when he failed to caution the witness not to refer to the prior trial, and failed to object to highly prejudicial remarks and request they be stricken from the record. In making this allegation of error, the Petitioner relies on *Coffee v. State*, where the Maryland Court of Special Appeals concluded that when the jury learned of appellant's prior trial and conviction of the very same charge, this information was so prejudicial that it denied the defendant of a fair trial. *Coffee v. State*, 100 Md. App 587, 642 A.2d 276 (1994). In *Coffee*, the judgment was reversed and there was a remand for a new trial….

….Nonetheless, this Court believes that the *Coffee* case is distinguishable from the instant matter. In *Coffee*, the most damning part of the testimony was not that there was a previous trial but there was a trial that concluded with a conviction. "A jury's prior knowledge of a prior trial, alone, did not warrant concluding" that the Petitioner's relief should be granted. *Poole v. State*, 295 Md. 167, 453 A.2d 1218.

This Court is not persuaded by the Petitioner's argument. The mere mention of a prior trial does not automatically call for granting a new trial. There was no mention of the Petitioner's conviction. Therefore, allegation of error is denied.

Paper No. 8, Exhibit 17 at 8-9. The post-conviction court's findings are borne out by the record, and are in accord with trial counsel's stated strategy of arguing to the jury that the State's witness at the second trial also was not truthful and the State's case was unreliable. Relief is not warranted pursuant to 28 U.S.C. § 2254(d).

<u>Failure to Argue Motion for Judgment of Acquittal with Particularity</u>

The post-conviction court found no merit to Davis's fifth claim on both factual and legal grounds:

> [T]there is no requirement to raise or pursue a judgment of acquittal. The Maryland Rules are specific in stating that defense counsel **may** move for Judgment of Acquittal on any or all issues but is not required. Md. Rule 2-519. There is no mandate upon defense counsel to proceed with a judgment of acquittal. However, counsel did move to do so….

> ….In *Fowler v. State*, the Court of Appeals held that "[w]e have reviewed the evidence in its entirety although not required to do so under Rule 755 and it seems too clear for argument that there was legally sufficient evidence to support the verdict and that the State clearly met the burden of showing that the killing was willful, deliberate and premeditated. No charge of incompetence of counsel can be based upon the failure to make a motion that the trial court could not properly have granted." *Fowler v. State*, 237 Md. 508, 206 A.2d 802 (1965).  Additionally, an ineffective assistance of counsel claim cannot be founded on failure to raise a Judgment for Acquittal.

> Furthermore, Petitioner claims that counsel failed to move for acquittal on all particularized grounds as described above. Petitioner asserts that had trial counsel so moved, the trial court would have granted said motion and acquitted Petitioner of some or all charges….However, defense counsel did move for judgment of acquittal on all grounds:

>> MR. VAN BAVEL: Your Honor at this time I want to make a motion of acquittal of the whole charges and I would specifically point out that there has been no testimony to implicate that the person shot and whose body was recovered on Westwood street was in fact the same person who is in the autopsy protocol.

Tr. 11/14/2002 pg. 145

> The record reflects that defense counsel moved to have the Petitioner acquitted of all charges and in accordance with Maryland Rule 4-324(a) he stated his motion with specificity that "there has been no testimony to implicate that the person shot and whose body was recovered on Westwood street was in fact the same person who is in the autopsy protocol. *Id*.

> If counsel believes the facts are not present to support the Motion for Acquittal, there is not a mandate to make the motion. Most importantly, however, in this case, despite Petitioner's assertion, defense counsel did in fact

> make a Motion for Acquittal on all charges. This allegation is unsupported by
> the facts and the law and therefore this allegation of error is denied.

Paper No. 8, Exhibit 17 at 9-11.  This Court concurs with the decision of the state court.  There are no grounds for federal habeas relief.

Alleged Failure to Communicate Plea Offer

The first prong of the *Strickland* test requires an evaluation of counsel's performance in light of an "objective standard of 'reasonably effective assistance' under 'prevailing professional norms.' " *Briley v. Bass*, 750 F.2d 1238, 1247 (4th Cir.1984).  The American Bar Association's standards, recognized by the Supreme Court as "guides to determining what is reasonable," *Strickland*, 466 U.S. at 688, provide the following guidelines concerning the proper relationship between defense counsel and client in the plea agreement context:

> (a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.
> (b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the client of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision.

Likewise, the Maryland Rules of Professional Conduct,  Rule 1.4,  requires defense counsel to communicate the terms of all plea offers made. Federal courts have been unanimous in finding that where defense counsel has failed to inform a defendant of a plea offer, or where defense counsel's incompetence results in a defendants' deciding to go to trial rather than pleading guilty such conduct constitutes a violation of Defendant's Sixth Amendment right to the effective assistance of counsel. *See e.g. Johnson v. Duckwork* 793 F. 2d 898, 900-02 (7th Cir. 1986) (defense counsel should keep defendant apprised of all development in the plea negotiation process and communicate the prosecutor's proposals promptly); *United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994) (failing to inform defendant of plea offer was unreasonable

assistance); *United States v. Leonti*, 326 F.3d 1111 (9th Cir. 2003); *U.S. ex rel. Caruso v. Zelinsky*, 689 F.2d 435 (1982) (failure to communicate a plea bargain offer to defendant denied defendant his Sixth and Fourteen Amendment rights to effective assistance of counsel).

The Supreme Court has not given guidance as to the interplay between *Strickland* and the issue of communication of a plea offer. Even assuming the failure to communicate a plea offer amounts to ineffective assistance, the post-conviction court's findings with regard to Davis's claim demonstrate no entitlement to relief:

> Petitioner claims that trial counsel was ineffective in his assistance when he failed to inform the defendant of a plea offer made by the State…. However, Petitioner does not make reference to the record or any conversation, which would allow this Court to make note of a potential plea agreement. "If a petitioner fails to present reasons to support his allegations, the hearing judge may deny relief." *Duff v. Warden*, 234 Md. 646, 648 (1964). In seeing that the Petitioner does not provide any reasons for which this Court can make a proper ruling, this allegation of error is denied.

Paper No. 8, Exhibit 17 at 11-12. This finding is supported by the post-conviction testimony of trial counsel, who testified that although he could not recall his exact communications with Davis, it was his routine practice to communicate any plea offers to his clients and discuss it with them. *Id*., Exhibit 16 at 77-79, 92-98, 132-33. Counsel stated that he "would have presented it [any offer made by the State] to the client, answered questions, and left it to the client to decide." *Id*. at 98. Relief will not be granted as to this claim.

<u>Alleged Failure to Voir Dire Juror</u>

In his seventh claim, Davis contends trial counsel was ineffective for failing to voir dire a juror who allegedly came into the courtroom unexpectedly and saw him wearing restraints. On post-conviction review, the Circuit Court judge found the claim not reflected in the record:

> …. The record is absent of any evidence that the a juror saw the Petitioner in shackles or that Petitioner asked his defense counsel for a new trial regarding the alleged incident.

However, assuming arguendo, even if a juror did see the Petitioner in shackles, the relief for such a chance viewing is not the granting of a new trial. "A juror's chance viewing of the accused in handcuffs is not prejudicial where conditions under which the accused is seen are routine security measures rather than unusual restraints." *Jones v. Gaither*, 640 F. Supp. 741 (N.D. Ga. 1986), *judgment aff'd*, 813 F.2d 410 (11th Cir. 1987). From the account retold by the Petitioner, a juror saw the Petitioner during a break for lunch during his trial. Petitioner makes no assertion as to time or other factors that could persuade this Court that the juror seeing the Petitioner in shackles could lead to prejudice on behalf of the Petitioner. Since the record does not reflect this event, and the chance occurrence of the juror seeing him resulted in prejudice, this Court denies this allegation of error.

Paper No. 8, Exhibit 17 at 12-13. Neither deficiency of counsel nor prejudice to Davis has been

established and, accordingly, the post-conviction court's finding is upheld.

### Failure to Move for Suppression of Mayo's Identification

In examining this claim, the post-conviction court found as follows:

Petitioner argues that trial counsel was ineffective when he failed to file a Motion to Suppress the testimony of Patricia Mayo. His claim is that trial counsel was aware of Mayo's false statements to the police.

Despite the Petitioner's claim, the record does not reflect that Mayo intentionally provided false statements to the Court. It was the testimony of Brenda Brown that led to a new trial. Ms. Brown's false testimony was the catalyst for this event. As noted above, trial counsel had a chance to try to suppress the testimony of Ms. Mayo. The matter was heard before Judge Evelyn O. Cannon on September 13, 2001. This was during the first trial. Judge Cannon denied the motion. There was no need to rehear the Motion to Suppress because trial counsel had not developed any new evidence to suppress her testimony. Since counsel acted within traditional norms, this allegation of error is denied.

Paper No. 8, Exhibit 17 at 13. The state court determination is reasonable and will be upheld, as

Davis developed no facts as to why a second suppression hearing would be necessary.

### Failure to Impeach Mayo

As noted by the post-conviction court, Davis contends trial counsel was deficient for

failing to impeach Mayo concerning her agreement with the State. Davis claims that collusion

with the State existed because Mayo served only two months incarceration on a seven-month sentence, thus providing her a benefit for her testimony.  At the post-conviction hearing, counsel testified that through his cross-examination he attempted to determine whether Mayo "received any favorable treatment for her testimony for her statement to the police."  Paper No. 8, Exhibit 16 at 89.  Indeed, the record shows that counsel attempted to impeach Mayo's testimony repeatedly (*id*., Exhibit 4 at 57, 108, 112-18), and also attacked her credibility in closing argument.  *Id*., Exhibit 5 at 14-28.  For that reason, the post-conviction court found that:

> The record does not reflect any sort of plea agreement between the State and Ms. Mayo. Defense Counsel asked Ms. Mayo whether or not she received a "break" and she testified that she did not. The Petitioner['s assertion] that defense counsel could have elicited testimony is unsubstantiated. The question was asked and answered and to believe that anything else could have been gained requires speculation in which this Court will not participate. This allegation of error is denied.

Paper No. 8, Exhibit 17 at 14.  Davis has shown neither deficiency nor prejudice as a result of counsel's inability to impeach Mayo's testimony.  Davis's tenth ground provides no basis for habeas corpus relief.

Failure to Request Instruction on Voluntary Manslaughter

Counsel's failure to seek instructions that define the applicable state law as to the crimes with which a defendant is charged is deficient and prejudicial.  *See Lunchenburg v. Smith*, 79 F.3d 388 (4th Cir. 1996).  Davis claims he was prejudiced when counsel failed to request an instruction on voluntary manslaughter, based on the fact that the "[v]ictim and [Davis] got into a heated argument and a fight broke out, [the] victim stabbed [Davis] according to witness testimony, [and Davis] then pulled out a gun and shot [the] victim."  Paper No. 1, Ground Eleven.  The post-conviction court fully explored this claim, stating:

> Maryland Rule 4-325(c) coupled with the comments states that defense counsel can advance several theories despite being inconsistent in nature. The

17

Petitioner argues here that given the facts of the case, defense counsel should have moved for a voluntary manslaughter instruction.

The Petitioner notes that the Maryland Pattern Jury Instructions notes that Voluntary Manslaughter is an intentional killing, which would be murder, but is not murder because the Defendant acted in hot-blooded response to legally adequate provocation. MPH 4:17-4C. Furthermore, a defendant is entitled to have the jury instructed on any theory of defense that is fairly supported by the evidence even if several theories offered are inconsistent. *Sims v. State*, 319 Md. 540, 573 A.2d 1317 (1990). Petitioner asserts that counsel should have provided the jury with an alternative view of the facts presented to aid in the mitigation of a potential conviction.

While Maryland law does allow for the offering of multiple inconsistent theories, such an approach appears flawed in the instant matter. The Petitioner was charged with the crime of murder in the first degree. The theory of the case for the Petitioner at both trials was that he did not commit the crime and that multiple people can attest to his absence from the scene of the crime. The Petitioner would now have the jury at trial hear such a theory and juxtapose said theory with an instruction for manslaughter. In essence, the jury would have to ponder the assertion that the Petitioner did not commit the crime and was no where near the scene of the event; juxtaposed with his contention that he did commit the crime, but he did it in hot blood and thus the jury should mitigate his crime to voluntary manslaughter. The two ideas appear to be the complete antithesis of one another.

Additionally, the facts do not support the allowance of a manslaughter instruction. The Petitioner, along with an accomplice, were alleged to have been attempting to sell a substance that looked similar to "crack" cocaine. The individuals would sell the product and leave with the profits. The two men apparently had an argument. The evidence illustrated that the Petitioner had a fight with the victim and was angry with him. The Petitioner left the scene and did not return for at least ten minutes. A manslaughter killing requires a confluence of several elements. The defendant must react to something in a hot-blooded rage; the rage must be caused by legally adequate provocation; the defendant was still in rage at the time of the killing; there was not enough time to cool down from the rage; and the victim was the person who provoked the rage. The evidence at trial showed that the Petitioner left the scene, retrieved a weapon, returned to the scene ten minutes later and killed the victim. The defendant had adequate time to cool down from the initial confrontation. Thus, the facts do not support a Manslaughter instruction. Furthermore, while the Petitioner maybe allowed to present inconsistent theories, it does not seem prudent that the Petitioner would be allowed to present two theories, which are polar opposites of one another. This Court does not see error with defense counsel not asking for a manslaughter instruction. Therefore, this allegation of error is denied.

Paper No. 8, Exhibit 17 at 14-16. The state court's determination that the facts of the case did not support a voluntary manslaughter instruction is reasonable and entitled to deference. Relief is not warranted on this claim.

Failure to Move To Correct Commitment Record

Title 28 U.S.C. Section 2254(a) permits this Court to consider habeas corpus relief "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."[8] At best, Davis's claim that trial counsel failed to correct an error in his commitment record might constitute a claim that such deficiency amounted to a denial of due process. In any event, the post-conviction court reviewed the commitment record as recorded on the docket and as listed by Division of Correction personnel at Davis's place of confinement, and found his sentence to be correctly reflected in those records. Nothing more is constitutionally required.

Failure to Object to Autopsy Photos

Davis's contention that counsel should have objected to the admission into evidence of prejudicial autopsy photographs was fully explored on post-conviction review:

> Generally, photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. 40A Am. Jur. 2d Homicide § 417. If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence. *Id*. However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime even though they may tend to arouse the passion or prejudice of the jurors. *Id*. Thus, the test for determining whether a

---

[8] *See also Estelle v. McGuire*, 502 U.S. 62, 67-75 (1991) (federal habeas corpus review not available for errors of state law).

photograph maybe shown to the jury is whether the photograph's probative value outweighs its possible prejudicial effect. *Id.*

The Petitioner cites *Banks v. State*, 84 Md. App. 582, 581 A.2d 439 (1990). However, the holding in *Banks* presents a different set of circumstances than the instant matter. In *Banks*, the State attempted to introduce evidence of the defendant wearing a firearm and the case involved the sale of narcotics. The Court held there that "[t]he powerful prejudicial impact of the evidence at issue cannot be seriously disputed. The photos show a man, alleged to be Appellant, who was in possession of and apparently quite impressed with a small handgun. News reports about rampant drug-related shootings cannot be presumed to have escaped the jury's notice. Thus, there is little subtlety in the message that the armed man in the pictures is a drug dealer. *Banks*, 84 Md. App. at 591, 581 A.2d at 444.

Despite the Petitioner's claim, the pictures introduced by the State were introduced to demonstrate the deceased's injuries. Furthermore, the record reflects that the pictures were not particularly gruesome or gory. Additionally, the prosecutor did not use the pictures to persuade the jury in any particular matter. The pictures have probative value. They demonstrate where the victim was shot and display the entry and exits wounds. The State submitted the evidence via the report of the Maryland Office of the Medical Examiner on the autopsy of the decedent. Since these pictures were not prejudicial in their offering into evidence, this allegation of error is denied.

Paper No. 8, Exhibit 17 at 17-18. Again, Davis's ground for relief appears to turn entirely on state law, thus placing it outside the purview of federal habeas corpus review. *See Estelle*, 502 U.S. at 67-75. Having so determined, the undersigned nonetheless finds the post-conviction court's determination reasonable and appropriate.

## Certificate of Appealability

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his motion. *See* 28 U.S.C. § 2253(c) (1). "A [Certificate of Appealability, or "COA"] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at §2253(c) (2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282, (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues

presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).

The Court will not issue a certificate of appealability because Davis has not made the requisite showing. Denial of a certificate of appealability in this Court does not prevent Davis from seeking a certificate of appealability from the appellate court.

The Petition is denied and dismissed. A separate order follows.

DATED: June 23, 2010

_____/s/_____
Alexander Williams, Jr.
United States District Judge